```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MEDITERRANEAN SHIPPING COMPANY
(USA) INC.,

                            Plaintiff,                              OPINION AND ORDER

          - against -                                               13-cv-6357 (ER)

AMERICAN CARGO SHIPPING LINES, INC.,

                            Defendant.
-----------------------------------------------------------------x
```

Ramos, D.J.:

Plaintiff Mediterranean Shipping Company (USA), Inc. ("MSC" or "Plaintiff") brings suit against Defendant American Cargo Shipping Lines, Inc. ("American Cargo" or "Defendant") for breach of contract. Doc. 7. MSC alleges that American Cargo commissioned MSC to transport several shipments of cargo. *Id*. MSC transported the shipments to their destination ports, but they were not picked up on time. *Id*. MSC seeks reimbursement of all the charges it allegedly incurred due to American Cargo's failure to ensure that the cargo was timely picked up. *Id*. Presently before the Court is Defendant's motion to partially dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 8. For the reasons discussed below, that motion is GRANTED.

I.      Factual Background

The following facts are based on the allegations in the Amended Complaint, which the Court accepts as true for purposes of the instant motion. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

### A. MSC and Its Standard Form Bill of Lading

Plaintiff MSC is a "common carrier of containerized cargo by ocean vessel in the foreign commerce of the United States." Am. Compl. ¶ 5. MSC has a standard form bill of lading contract that it utilizes with respect to shipments it accepts for carriage. *Id.* ¶ 7. The terms and conditions of the bill of lading are typically printed on the back of any original bills of lading that MSC issues. *Id.* The terms and conditions are also available on MSC's website or from MSC or any of its agents upon request. *Id.* In addition, the terms and conditions are part of the tariff that MSC is required to maintain under the Shipping Act.[1] *Id.*

The face of the standard form bill of lading provides:

> IN ACCEPTING THIS BILL OF LADING THE MERCHANT EXPRESSLY ACCEPTS AND AGREES TO ALL THE TERMS AND CONDITIONS, WHETHER PRINTED, STAMPED OR OTHERWISE INCORPORATED ON THIS SIDE AND ON THE REVERSE SIDE OF THIS BILL OF LADING AND THE TERMS AND CONDITIONS OF THE CARRIER'S APPLICABLE TARIFF AS IF THEY WERE ALL SIGNED BY THE MERCHANT.

*Id.* Ex. A, at 1. This language also appears on the face of each bill of lading at issue in this case. *Id.* Ex. C, F, I, L.

The terms and conditions of the standard form bill of lading include the following provisions:

> The terms and conditions of the Carrier's applicable Tariff are incorporated into this Bill of lading. Particular attention is drawn to terms and conditions concerning additional charges including demurrage, per diem, storage expenses and legal fees, etc. A copy of the applicable Tariff can be obtained from the Carrier or its agent upon request and the Merchant is deemed to know and accept such Tariff. In the case of any conflict or inconsistency between this Bill of Lading and the applicable Tariff, it is agreed that this Bill of Lading shall prevail.

*Id.* Ex. A, at 3.

---

[1] In its current form, the applicable provision of the Shipping Act is codified at 46 U.S.C. § 40501.

> This Bill of Lading is the final contract between the parties which supersedes any prior agreement or understanding, whether in writing or verbal, save where this Bill of Lading has been issued pursuant to another contract between the Merchant and the Carrier, when such other contract and this Bill of Lading shall be construed together.

*Id*. Ex. A, at 13. The definition of Merchant "includes the Shipper, Consignee, holder of this Bill of Lading, the receiver of the Goods and any Person owning, entitled to or claiming the possession of the Goods or of this Bill of Lading or anyone acting on behalf of this Person." *Id*. Ex. A, at 2.

Although the standard form terms and conditions were referenced on the face of the bills of lading at issue, the actual terms and conditions themselves were not attached. *See id*. Ex. C, F, I, L.

### B. American Cargo's Transactions with MSC

The dispute between the parties arises out of four transactions between MSC and American Cargo during 2009-2010. All four transactions were similar in nature and proceeded in the following manner:

- American Cargo approached MSC about shipping cargo from the United States to India. Am. Compl. ¶¶ 10, 23, 36, 51.

- MSC provided American Cargo a quote for the shipment of the cargo. *Id*. ¶¶ 11, 24, 37, 52.

- American Cargo decided to use MSC and booked shipment for the cargo accordingly. *Id*. ¶¶ 12-13, 25-26, 38-39, 53-54. MSC issued American Cargo a booking confirmation. *Id*. ¶¶ 13, 26, 39, 54; *see also id.* Ex. B, E, H, K (booking confirmations).

- American Cargo was identified as the shipper in each booking confirmation. *See id.* Ex. B, E, H, K. The booking confirmations included the following language: "Please be informed that MSC has implemented the use of a new [bill of lading] format. We suggest that you read the terms and conditions since some of the clauses have been changed." *Id*. Ex. B, at 1; Ex. E, at 1; Ex. H, at 1; Ex. K, at 2.

3

- MSC issued a bill of lading based on the previously issued booking confirmation. *Id.* ¶¶ 17, 30, 43, 58.

- One bill of lading (number MSCUNK835907) was slightly different from the other three bills. In this bill of lading, the shipper was identified both as "American Cargo Shipping Lines, Inc." and as "N.A.C/LITHOPLANET LLC." *Id.* Ex. L. American Cargo is not currently seeking dismissal with respect to this shipment. *See* Def.'s Mem. of Law in Supp. at 3 n.1.

- The other three bills of lading (numbers MSCUNE992952, MSCUNE991269 and MSCUNK512043) identified American Cargo as agent for N.A.C. Inc. or N.A.C. Inc. and another entity. *Id.* Ex. C, Ex. F, Ex. I. Of these three bills, two (numbers MSCUNE992952 and MSCUNE991269) identified American Cargo as agent for N.A.C. Inc. *Id.* Ex. C, Ex. F. One bill of lading (number MSCUNK512043) identified American Cargo as agent for N.A.C./PANPAC LLC. *Id.* Ex. I. These three bills of lading are the subject of the instant motion.

- Each shipment was successfully delivered to the destination port, but the cargo was not picked up within the time allotted by the tariff. *Id.* ¶¶ 19, 21, 32, 34, 47, 49, 60, 62. While the cargo was held at the terminal, it accrued demurrage, administrative fees, and/or other charges. *Id.* ¶¶ 21-22, 34-35, 49-50, 62-63.

- For each of the bills, MSC sent three notices to American Cargo that the cargo had not cleared the terminal. *Id.* ¶¶ 20, 33, 48, 61; *see also id.* Ex. D, G, J, M (notices). The notices included invoices reflecting the charges that had accrued. *See id.* Ex. D, G, J, M. MSC also informed American Cargo that, pursuant to the terms and conditions of the standard form bill of lading, American Cargo, acting on behalf of or as the shipper, would be liable for any charges resulting from its failure to ensure that the cargo containers were picked up, emptied and returned to MSC. *Id.* ¶¶ 20, 33, 48, 61. These charges have not been paid. *See id.* ¶¶ 22, 35, 50, 63.

- American Cargo paid the freight due. *Id.* ¶ 64.

MSC filed suit on September 10, 2013 and amended its Complaint on November 1, 2013. Docs. 1, 7. MSC alleges that American Cargo breached the contracts because the shipments were not picked up on time. According to MSC, since American Cargo is a Merchant as that term is defined in the terms and conditions of the bills of lading, and since a Merchant is obligated to ensure that the cargo is picked up on time, American Cargo is liable for any charges incurred by the unclaimed cargo. *See id.* ¶ 66. The total cost of the charges resulting from the

alleged breaches was $240,881. *Id.* ¶ 67. MSC also seeks to recover its legal fees and expenses, which will equal one-third of any recovery plus costs and expenses. *Id.* ¶¶ 71-72.

Defendant American Cargo asks the court to dismiss the Amended Complaint with respect to the three bills of lading that identify Defendant as an "agent." Doc. 8. American Cargo argues that, because its principals were disclosed, and because it does not fall within the definition of "Merchant," it is not liable for the demurrage. *See, e.g.*, Def.'s Mem. of Law in Supp. at 1.

## II.  Legal Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch*, 699 F.3d at 145. However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III. Discussion[2]

### A. Defendant Was Acting as an Agent for a Disclosed Principal When the Contracts Were Made Final

Defendant argues that it is not liable for the demurrage because it was acting as an agent for a disclosed principal and thus was not itself a party to the bills of lading at issue. Def.'s Mem. of Law in Supp. at 5-11.

"When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22-23 (2004) (citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961)). Such is the case here, as each of the transactions at issue involved international shipments of goods by sea. *See, e.g.*, *Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 349 (S.D.N.Y. 2013). "Under federal common law, 'contracts for carriage of goods by sea must be construed like any other contracts: by their terms and consistent with the intent of the parties.'" *Id.* (quoting *Kirby*, 543 U.S. at 31). Common law principles of agency also apply. *See Fireman's Fund McMgee Marine v. M/V CAROLINE*, No. 02 Civ. 6188 (DC), 2004 WL 287663, at *2 (S.D.N.Y. Feb. 11, 2004) (citing *Getty Oil Co. v. Norse Mgmt. Co. (PTE)*, 711 F. Supp. 175, 177 (S.D.N.Y. 1989)). At common

---

[2] As discussed, American Cargo received the front face of the bills of lading but did not receive the backs, which purportedly would have contained the terms and conditions. Both parties, however, appear to proceed under the assumption that the standard form terms and conditions govern the transactions at issue. *See, e.g.*, Def.'s Mem. of Law in Supp. at 6-7 (arguing that the terms of the standard form bill of lading dictate the outcome of the instant motion). This discussion therefore assumes without deciding that the standard form terms and conditions are properly incorporated into the bills of lading by reference. *See New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 30 (2d Cir. 1997) (noting that "maritime contracts may validly incorporate by reference terms from other documents or agreements" and that, to do so, a contract must clearly reference the other document and describe it "in such terms that its identity may be ascertained beyond doubt").

law, if an agent executes a contract on behalf of its principal, and if the agent has properly disclosed its principal, then the agent is not itself a party to the contract and is not liable for claims arising out of it.  *See Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 860 (2d Cir. 1985) (citing Restatement (Second) of Agency §§ 320, 328 (1958) and *Leather's Best, Inc. v. S. S. Mormaclynx*, 451 F.2d 800, 808 (2d Cir. 1971)).  To avoid liability, "[t]he agent must disclose his principal at or before the time when the contractual agreement is made final." *Orient Mid-East Lines v. Albert E. Bowen, Inc.*, 458 F.2d 572, 576 (2d Cir. 1972) (quoting *Cleary Bros v. Christie Scow Corp.*, 215 F.2d 740, 743 (2d Cir. 1954)) (internal quotation mark omitted).

Citing the Eastern District of New York's recent decision in *CMA-CGM (Canada), Inc. v. World Shippers Consultants, Ltd.*, 921 F. Supp. 2d 1 (E.D.N.Y. 2013), MSC argues that the contracts became final when the booking confirmations were issued; since American Cargo did not disclose its principal on the booking confirmations, Plaintiff argues that it should be held responsible for all of the charges incurred due to the failed cargo pickups.  Pl.'s Mem. of Law in Opp'n at 6-10.

While the fact pattern in *World Shippers* is largely analogous to that of the instant case, the key facts driving that decision are not present here.  Indeed, the contrast between the two fact patterns demonstrates that the Eastern District's reasoning, which the Court otherwise finds persuasive, actually compels the opposite result in the case at bar.  In *World Shippers*, the plaintiff was an ocean carrier,[3] and the defendant was a freight forwarder that helps shippers reserve space for their freight.  *World Shippers*, 921 F. Supp. 2d at 2.  The defendant arranged

---

[3] Technically, the plaintiff was the carrier's agent.  *See World Shippers*, 921 F. Supp. 2d at 2.  The distinction is immaterial for present purposes.

for cargo space with the plaintiff in connection with 23 shipments. *Id*. at 3. The plaintiff subsequently issued booking confirmations for those shipments. *Id*. The booking confirmations did not identify any shipper; they only reflected that the defendant reserved cargo space on behalf of an undisclosed shipper. *Id*. The booking confirmations also included clauses that stated that "all moves referenced in the booking confirmation are subject to the terms and conditions of the carrier-issued long form bill of lading" and that the customer in the booking confirmation "hereby acknowledges and agrees to all the terms and conditions of the carriers issued [sic] long form bill of lading." *Id*. at 4 (internal quotation marks omitted). The long form bill of lading and its terms and conditions were not attached to the booking confirmations, but the booking confirmations indicated that the bill was available at any agency of the plaintiff or online (at a specified website). *Id*. The plaintiff later issued transaction-specific bills of lading to the defendant. *See id*. Each bill of lading included the identity of the shipper and listed the defendant as a forwarding agent. *Id*. The bills' terms and conditions were omitted from the reverse side of the documents, but the face of the bills provided that the Merchant was fully aware of and agreed to be bound by those terms. *Id.* The terms and conditions, which were separately before the court, provided relevant definitions and set forth the parties' obligations. *Id*. at 4-5. The definitions provided that the word "Merchant" included "the shipper as well as 'anyone acting on behalf of,' *inter alia,* the shipper." *Id.* at 4.

The dispute in *World Shippers* arose out of the defendant's failure to pay for the shipments; the plaintiff brought suit to recover that unpaid freight. *Id*. at 2. The defendant alleged that it never received payment from the shippers and should not be held liable because (1) it was acting as the agent of the shippers and (2) it disclosed the principals' identities in the bills of lading. *See id*. at 2, 6-7. The court entered judgment for the plaintiff, finding that the

defendant acted as an agent for an undisclosed principal when it agreed to the booking confirmations. *Id*. at 7-8. The Court observed that those agreements "incorporated the full terms and conditions of the Bills of Lading," which in turn imposed joint and several liability on the defendant by virtue of its status as a "Merchant." *Id.* at 7.[4] In other words, the incorporation of the terms and conditions into the booking confirmations rendered the latter independent contracts for the purpose of imposing the payment obligations at issue; thus they were final contracts for purposes of the agency determination. Because the defendant did not disclose its principal in those booking confirmations, it was held liable for the unpaid freight.[5]

The Court does not read *World Shippers* for the proposition that *all* booking confirmations are final contracts, but merely for the proposition that the specific ones at issue in that case were. However, the crucial elements driving the Eastern District's holding are lacking in the instant case. The defendants there were liable because the clear reference to the terms and conditions in the booking confirmations, along with the parties' express acknowledgement that they would be bound by those terms, operated to impose the requisite liability. *Cf. A.P. Moller-Maersk A/S v. Ocean Express Miami*, 550 F. Supp. 2d 454, 468 (S.D.N.Y. 2008) ("Upon issuance of an initial receipt or booking document incorporating a bill of lading, the terms of the latter become part of the parties' contract.").[6]

---

[4] The court held that the defendant's disclosure of the actual shippers in the bills of lading did not change the analysis, instead merely making the shippers *additional* liable parties under the contracts. *World Shippers*, 921 F. Supp. 2d at 7-8.

[5] The Court notes that the *World Shippers* holding was bolstered by the definition of "Merchant," which encompassed agents of the shipper. As discussed below, Plaintiff has not plausibly alleged that the same is true here.

[6] Defendant cites a number of cases for the proposition that the bills of lading are the controlling documents for purposes of construing the terms of the parties' contracts. *See* Def.'s Mem. of Law in Supp. at 8-10. These cases are inapposite, as the issue before the Court is not whether a bill of lading *supersedes* inconsistent terms contained in

9

Such was not the case with the booking confirmations presently before the Court. The only reference to the terms and conditions in those booking confirmations reads as follows: "Please be informed that MSC has implemented the use of a new [bill of lading] format. We suggest that you read the terms and conditions since some of the clauses have been changed." Am. Compl. Ex. B, at 1; Ex. E, at 1; Ex. H, at 1; Ex. K, at 2. Nothing in this language even purports to incorporate the standard form bill of lading or its terms and conditions into the booking confirmations themselves; while the terms and conditions are mentioned, there is no operative language effecting an incorporation by reference.[7] The booking confirmations in the instant case therefore differ from those at issue in *World Shippers* in that they do not independently impose liability for the charges Plaintiff seeks to recover. Instead, the contractual obligations giving rise to the instant lawsuit are set out only in the bills of lading.[8]

---

an earlier-issued document, but rather whether that other document itself represented a final contract capable of imposing liability for the demurrage and other charges. The rail carriage cases Defendant cites, neither of which involved a booking confirmation, are equally unhelpful in this regard. *See* Def.'s Mem. of Law in Supp. at 6 (citing *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342 (1982) and *Tex. & P. Ry. Co. v. Leatherwood*, 250 U.S. 478, 481 (1919)).

This Court's discussion of agency in *National Liability & Fire Insurance Co. v. Mediterranean Shipping Co., S.A.*, No. 09 Civ. 6516 (WHP), 2011 WL 723604 (S.D.N.Y. Feb. 22, 2011), involved a markedly distinguishable factual scenario, wherein the booking confirmation expressly limited the carrier-side entity's agency to those services contemplated by the (unissued) bill of lading. *See id.* at *2-3. Thus, the bill of lading was dispositive of the agency relationship in that case precisely *because* the booking confirmation so provided.

[7] Plaintiff argues that "[t]he booking confirmations validly incorporated the MSC bill of lading terms and conditions." Pl.'s Mem. of Law in Opp'n at 8. However, Plaintiff has not identified—nor has the Court been able to locate—any cases in which this type of general allusion to the existence of an extrinsic document was deemed to effect an incorporation by reference.

[8] As noted above, the terms and conditions of the standard form bill of lading contain the following provision:

> This Bill of Lading is the final contract between the parties which supersedes any prior agreement or understanding, whether in writing or verbal, save where this Bill of Lading has been issued pursuant to another contract between the Merchant and the Carrier, when such other contract and this Bill of Lading shall be construed together.

Because the transactions did not become final until the bills of lading were issued, the agency determination must be made as of that point in time. *See Orient Mid-East Lines*, 458 F.2d at 576. Since American Cargo disclosed its principals on the three bills of lading at issue, American Cargo was acting as an agent for a disclosed principal with respect to the three transactions governed by those bills.

### B. The Amended Complaint Fails To Plausibly Allege That American Cargo Is a Merchant

If an agent "clearly manifested its intention to bind itself instead of, or in addition to, its principal," then the agent will be bound by the terms of the contract even if it was acting as an agent for a disclosed principal. *Ariel Mar. Grp., Inc. v. Zust Bachmeier of Switzerland, Inc.*, 762 F. Supp. 55, 60 (S.D.N.Y. 1991).[9] The Court must therefore consider whether the allegations in the Amended Complaint are sufficient to state a plausible claim under this exception. They are not.

MSC alleges simply that American Cargo is liable because it is "the shipper or acting on behalf of the shipper" and thus is a "Merchant under the terms and conditions of the bill[s] of lading." Am. Compl. ¶ 66. However, as the prior portion of this Opinion makes clear, American Cargo was *not* the shipper on the three bills of lading at issue, and Plaintiff's own breakdown of

---

Am. Compl. Ex. A, at 13. While Defendant maintains that the plain language of this clause establishes that the bills of lading are the final contracts, *see* Def.'s Mem. of Law in Supp. at 6-7, Plaintiff argues that this language indicates that the bills of lading and the booking confirmations should be construed together for purposes of imposing liabilities on American Cargo. Pl.'s Mem. of Law in Opp'n at 9-10. Even assuming, *arguendo*, that the bills of lading were issued "pursuant to" the booking confirmations within the meaning of this provision, it was still only at the point of the bills' issuance that the contracts became final. In other words, what is dispositive for present purposes is simply that the contracts forming the basis for this lawsuit were not made final until the bills of lading issued and their terms and conditions took effect.

[9] Agents for disclosed principals can also be held liable if they act fraudulently or outside the scope of their agency. *See Ariel*, 762 F. Supp. at 60. Nothing in the pleadings—or in the parties briefs—suggests that either of these exceptions is at issue here.

11

the definition of "Merchant" demonstrates that it does not, on its face, cover persons "acting on behalf of the shipper." *See* Pl.'s Mem. of Law in Opp'n at 11-12 (cataloguing the various entities that fall within the definition).

In its opposition papers, MSC seems to imply that American Cargo falls under the definition of "Merchant" because it acted on behalf of a "Person owning, entitled to or claiming the possession of the Goods or of this Bill of Lading." *See id.* However, arguments contained in motion papers cannot be used to cure deficiencies in the pleadings, *see Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998), and this theory, let alone any non-conclusory factual allegations supporting it, does not appear in the Amended Complaint.[10] Indeed, even the argument in Plaintiff's brief fails to clearly articulate the proffered basis for liability. Without a plausible claim that American Cargo fell within the definition of "Merchant" in the first place (*i.e.*, without a plausible claim that the bills of lading even purported to impose liabilities on the Defendant), it follows that MSC has failed to plausibly allege that, when entering into the bills of

---

[10] Defendant argues that it falls outside the definition of "Merchant" by virtue of the fact that its principal, N.A.C. Inc. ("N.A.C."), is a non-vessel operating common carrier ("NVOCC"). Def.'s Mem. of Law in Supp. at 11-12. Plaintiff does not speak to the merits of this position in its response, instead simply arguing that the extrinsic material to which Defendant points is not properly before the Court on a Rule 12(b)(6) motion. *See* Pl.'s Mem. of Law in Opp'n at 12-13.

Even if the Court were to conclude that N.A.C. is an NVOCC, potential factual issues would remain with respect to that entity's role in the context of the particular transactions at issue. Indeed, Defendant's argument with respect to N.A.C.'s status suggests that there were additional entities involved on the front end of the transaction; any determination with respect to N.A.C. would not necessarily rule out the possibility that American Cargo acted "on behalf of" one of those other entities for purposes of the "Merchant" definition. Without the benefit of a full evidentiary record identifying the various participants in the larger transaction—and their relationships to one another—the Court would be unable to make a definitive determination as to whether American Cargo falls outside the definition of "Merchant." Moreover, as noted above, one bill of lading (number MSCUNK512043) identifies American Cargo as agent for N.A.C. *and* PANPAC LLC. *See* Am. Compl. Ex. I. Because PANPAC LLC's identity (and its role within the transaction at issue) is unclear, any determination as to N.A.C. Inc.'s status would be non-dispositive as to the transaction governed by that bill of lading. For present purposes, therefore, the Court's analysis is limited to the adequacy of the facts alleged in the pleadings.

lading on behalf of its disclosed principals, American Cargo "clearly manifested" any intent to be independently bound under those contracts.[11]

Because Plaintiff has failed to state a plausible claim against Defendant under the three bills of lading at issue, Defendant's motion for a partial dismissal is granted.

## IV.     Conclusion

For the reasons set forth above, Defendant's motion to partially dismiss the Amended Complaint is GRANTED. The dismissal is without prejudice to the extent that it is based on deficiencies in the pleadings. If Plaintiff wishes to file a Second Amended Complaint, it shall do so by October 3, 2014. If Plaintiff declines to further amend the pleadings, the Court will schedule an initial case management and scheduling conference, as Defendant has already answered the Amended Complaint.

The Clerk of the Court is respectfully directed to terminate the motion (Doc. 8).

It is SO ORDERED.

Dated:   September 10, 2014
         New York, New York

_____
Edgardo Ramos, U.S.D.J.

---

[11] The parties debate whether the bills of lading are contracts of adhesion that should be strictly construed against Plaintiff. *See* Def.'s Mem. of Law in Supp. at 5; Pl.'s Mem. of Law in Opp'n at 5-6; Reply Mem. of Law in Supp. at 4-5. However, because any contractual ambiguities would need to be resolved in Plaintiff's favor at this stage in the proceedings, *see Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (citing *Int'l Audiotext Network, Inc. v. Am Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)), these arguments are inapposite for present purposes.

Similarly, Defendant asserts that any intent-based argument is belied by the fact that the terms and conditions were omitted from the actual bills of lading provided. *See* Def.'s Mem. of Law in Supp. at 11. As noted above, however, extrinsic materials can be incorporated into maritime contracts by reference, and other portions of Defendant's argument affirmatively rely on language contained in the terms and conditions. Therefore, the fact that Defendant only received the face of the bills of lading does not conclusively establish that Plaintiff's claim is precluded as a matter of law.